**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**BOWLING GREEN DIVISION**

**CIVIL ACTION NO.  1:06CV-165-M**

**HOLLEY PERFORMANCE PRODUCTS, INC.**                    **PLAINTIFF**

**V.**

**SMITH-CNC CHINA NETWORK COMPANY, et. al.**                **DEFENDANTS**

**MEMORANDUM OPINION**

This matter is before the Court upon a motion by Plaintiff for a preliminary injunction.[1] Plaintiff seeks exigent relief through a preliminary injunction with respect to its claim that Defendant has unlawfully converted tooling purchased from Defendant by Plaintiff.  A preliminary injunction hearing was held in this matter on November 7, 2006.  Douglas R. Smith, Smith-CNC's President and CEO, testified.  Fully briefed and argued, this matter is ripe for decision.  For the reasons set forth below, the motion by Plaintiff for a preliminary injunction is **GRANTED**.

**I. Facts**

Plaintiff Holley Performance Products, Inc. ("Holley"), is a manufacturer of specialized automobile parts  including  high performance  carburetors, superchargers, and throttle body fuel injection systems, which are specifically designed for racing applications.  According to Holley, every race car in the NASCAR Nextel Cup and every race car driven by a NHRA Pro-Stock champion uses a carburetor manufactured by Holley. (Plaintiff's Complaint, ¶ 14).

In 2005, Holley began contractual negotiations with Defendant Smith-CNC China Networking

---

[1]The plaintiffs actually submitted a motion for a temporary restraining order. However, since notice was given to the Defendant, the Court has considered this as a motion for a preliminary injunction.

Company ("Smith-CNC"). Holley wanted Smith-CNC to facilitate the manufacturing of certain types of Holley component parts in China. Prior to the execution of a final agreement, Holley provided Smith-CNC with the documentation it needed to make the "toolings"- or molds - that were necessary to manufacture the component parts Holley planned to order.  Subsequently, Smith-CNC arranged for a Chinese manufacturer to fabricate the tooling at issue in this case which was to be used in the manufacturing of component parts.  In June 2005, Holley and Smith-CNC formally entered into a contract which provided that Smith-CNC would sell and deliver to Holley certain types of component parts that Smith-CNC would have manufactured in China. (Ex.A-2, Holley Performance Products Agreement).The Agreement specifically states that "all tooling used in the production of the Products ("Tooling") is owned by and is the property of Holley." (Agreement, p. 8, § L.).[2]  Pursuant to this Agreement, Chinese manufacturers began to manufacture component parts for Holley.

On February 2, 2006, Holley terminated its contract with Smith-CNC, alleging that Smith-CNC had repeatedly failed to comply with its obligations under the contract. Following the termination of the agreement, Smith-CNC claimed that Holley owed it over  $300,000.00 for component parts that it had supplied to Holley pursuant to their Agreement. Additionally, Smith-CNC claimed that Holley's employment of a new broker, Taurus International, and its continued  use  through  Taurus,  of the Chinese  manufacturers  whom  Smith-CNC  had  first  engaged,  constituted  a  violation  of  the Agreement's exclusivity clause.  The two companies entered into negotiations concerning the disputed claims,  but failed  to reach an agreement.  On October 14, 2006, Smith-CNC removed the tooling at issue  in  this  case  from  one  of  the  Chinese  manufacturers,  thereby  preventing  the  continued

---

[2] The Agreement also provided: "The respective rights and duties of the parties are to be determined, in accordance with the law of the State of Kentucky, USA, exclusive of any provisions related to conflict of laws. (Agreement, p.10, § Q).

manufacture of component parts for Holley.  Thereupon,  Holley  filed this motion for a preliminary injunction to force Smith-CNC to return the tooling to the manufacturing facility and to refrain  from taking any other tooling in use by Holley's Chinese suppliers.

## II. Preliminary Injunction Standard

A preliminary injunction is an extraordinary remedy that is used to preserve the status quo between parties pending a final determination on the merits of the action.  In determining whether to issue a preliminary injunction, the Court  must  consider  four factors: (A) the likelihood of success on the merits; (B) the irreparable harm which could result to the movant without the relief requested; (C) the possibility of harm to others; and (D) the impact on the public interest. Schench v. City of Hudson, 114 F.3d 590, 593 (6th Cir. 1997).  "It is important to recognize that the four considerations applicable to preliminary injunctions are factors to be balanced and not prerequisites that must be satisfied.  These factors simply guide the discretion of the court; they are not meant to be rigid and unbending  requirements."  In  re Eagle-Picher Industries, Inc., 963  F.2d  855, 859 (6th  Cir. 1992)(citations omitted).  A party is not required to prove its case in full at the preliminary injunction stage. Six Clinics Holding Corp., II v. Cafcomp Systems, Inc., 119 F.3d 393, 400 (6th Cir. 1997). Therefore, the findings of fact and conclusions of law of a district court are not binding at a trial on the merits. Id.

## III. Discussion

## A. Holley's Likelihood of Success on the Merits

The Kentucky Supreme Court has enumerated seven elements necessary to prove a conversion claim: (1) the plaintiff had legal title to the converted property; (2) the plaintiff had possession of the property or the right to possess it at the time of conversion; (3) the defendant exercised dominion over

the property in a manner which denied the plaintiff's right to use and enjoy the property and which was to the defendant's own use and beneficial enjoyment; (4) the defendant intended to interfere with the plaintiff's possession; (5) the plaintiff made some demand for the property's return which the defendant refused; (6) the defendant's act was the legal cause of the plaintiff's loss of property; and (7) the plaintiff suffered damage by the loss of the property. Kentucky Association of Counties All Lines Fund Trust v. McClendon, 157 S.W.3d. 626, 632 (Ky. 2005).

Smith-CNC does not dispute that Holley had legal title to the tooling at the time Smith-CNC removed it from the Chinese manufacturing facility.  Both parties agree that the tooling at issue here became Holley's once Holley paid Smith-CNC for it.  Smith-CNC does not dispute that Holley has fully paid Smith-CNC for the tooling.

Instead, Smith-CNC argues that Holley cannot prove the second element of conversion - namely, that Holley had possession of the property or the right to possess it at the time of the conversion.  Smith-CNC claims that under Kentucky law, it has the right to possession of the tooling until Holley has fully paid it for the component parts manufactured with the tooling.  KRS 376.435(3)(a) states: "A molder shall have a lien, dependent on possession, on all dies, molds, forms, or patterns in his hands and that belong to a customer, for the balance due him from the customer for any manufacturing or fabrication work, and in the value of all material related to the work.  The molder may retain possession for the die, mold, form, or pattern until the charges are paid."

Based on the record thus far, the Court doubts the applicability of the statute to protect Smith-CNC's conduct here.  First, Smith-CNC does not appear to be a "molder" as defined by the statute. KRS 376.435(1)(a) defines a "molder" as "any person who fabricates, casts, or otherwise makes or uses a die, mold, form, or pattern for the purpose of manufacturing, assembling, casting, fabricating,

4

or otherwise making a product for a customer." The facts indicate that while the Chinese manufacturers engaged by Smith-CNC to manufacture toolings and component parts for Holley are "molders" under the statute, Smith-CNC is nothing more than a broker facilitating the manufacture.

Further, even if Smith-CNC could be considered a "molder" as defined by the statute, it does not appear that Smith-CNC complied with the notice requirements of the statute before enforcing the lien. KRS §376.435(3)(b) provides: "Before enforcing a lien, a molder shall give notice in writing to the customer, whether delivered personally or sent by registered mail to the last known address of the customer. The notice shall state that a lien is claimed for the damages set forth in or attached to the writing for manufacturing or fabrication work contracted or performed for the customer. The notice shall also include a demand for payment." Smith-CNC has submitted no evidence into the record which would suggest that it complied with these statutory notice requirements. Accordingly, it seems to the Court that Holley, not Smith-CNC, will be able to prove that it had the right to possess the tooling at the time it was taken by Smith-CNC.

The third element of conversion requires that the plaintiff prove that the defendant exercised dominion over the property in a manner which denied the plaintiff's right to use and enjoy the property and which was to the defendant's own use and beneficial enjoyment. Both parties seem to agree that Smith-CNC's taking of the tooling has prevented the Chinese manufacturers from using that tooling to make component parts for Holley and has thus deprived Holley of its rights to use the tooling.

To establish conversion, the plaintiff must also prove that the defendant intended to interfere with the plaintiff's possession. Here, the only reason Smith-CNC removed the tooling from the manufacturing facility was to interfere with Holley's possession. By depriving Holley of its right to possess the tooling, Smith-CNC hoped Holley would be forced to pay Smith-CNC the disputed

contractual amount so that manufacturing of component parts would continue.

The fifth element of conversion requires the plaintiff prove that the plaintiff made some demand for the property's return which the defendant refused. Accordingly, Holley has submitted into evidence a letter sent by its counsel to Smith-CNC's counsel demanding the return of the removed tooling. (Exhibit B-2, Letter from Holley's Counsel to Smith-CNC's Counsel, October 17, 2006).

It also seems likely that the plaintiff will be able to prove the last two elements of conversion, specifically, that Smith-CNC's removal of the tooling from the Chinese manufacturing facility was the legal cause of Holley's loss of the tooling and that Holley was damaged by the loss of the tooling. According to Holley, without the component parts that were being produced in the Chinese facility from which the tooling was taken, Holley's American manufacturing facilities will not be able to function efficiently and Holley will not be able to supply its customers with its products. (Exhibit B, Tomlinson Affidavit, ¶, ¶ 8-9).

Thus, it seems likely that Holley will prevail on its conversion claim at a trial on the merits.

## B. Irreparable Harm

A plaintiff's harm from the denial of a preliminary injunction is irreparable only if it is not fully compensable by monetary damages. Basicomputer Corp. V. Scott, 973 F.2d 507, 511 (6th Cir. 1992). The Sixth Circuit has held that an action which puts an injured party's reputation at risk may lead to "irreparable harm." Lorillard Tobacco Co. v. Amouri's Grand Foods, Inc., 453 F.3d 377, 381-382. (6th Cir. 2006). "An injury is not fully compensable by money damages if the nature of the plaintiff's loss would make damages difficult to calculate. In general, ....injury to reputation (is) difficult to calculate." United States v. Miami University, 294 F.3d 797, 819. (6th Cir. 2002)

Holley contends that it will suffer irreparable harm if the tooling is not returned because,

without the tooling, Holley will be unable to fulfill the orders of its longstanding customers, such as NASCAR. According to Holley, as of October 23, 2006, its current supply of the needed component parts would only last 45 days. (Ex. B, Tomlinson Affidavit, ¶ 8). Holley contends that if it is unable to supply its customers with products, Holley will suffer not only a financial loss, but its hard-earned reputation of trustworthiness and quality will be tarnished.

This Court concludes that Holley will suffer irreparable harm if the tooling removed from the Chinese facility by Smith-CNC is not returned.

**C. Possibility of Harm to Others**

Smith-CNC contends it will suffer "serious economic harm," if enjoined because the amount that Holley owes Smith-CNC constitutes a "substantial proportion of Smith-CNC's operating capital needs." Smith-CNC's potential financial injury can be fairly remedied by the judicial process. Here the potential harm to Holley's reputation outweighs the economic harm claimed by Smith-CNC.

**D. Impact on the Public Interest**

Finally, Holley contends that the public good will be preserved by ordering Smith-CNC to return the tooling because the 650 skilled laborers employed by Holley in North America rely on the components parts made from that tooling to manufacture finished products for Holley. The Court agrees.

**IV. Conclusion**

After weighing Holley's likelihood of success on the merits, the irreparable harm which Holley will suffer, the economic harm to Smith-CNC, and the impact on the public interest, the Court concludes that Holley's motion to force Smith-CNC to return the tooling to the manufacturing facility and to refrain from taking any other tooling in use by Holley's Chinese supplier should be granted.

Therefore, **IT IS HEREBY ORDERED** as follows:

1. The Defendants are ordered to immediately return to the Plaintiff, or its designated representative, the tooling which was removed from the Typical Foundry in China on October 14, 2006.

2. The Defendants are prohibited from removing, or attempting to remove, any other tooling in use by Holley and it's Chinese suppliers.

3. This Order is effective upon the date recited below and shall remain in effect until further Order of this Court.

4. Pursuant to Rule 65(c) of the Federal Rules of Civil Procedure, the Plaintiff shall post a bond in the amount of $25,000.00.

cc: counsel of record