# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# OWENSBORO

### CIVIL ACTION NO: 1:06CV-165-M

**HOLLEY PERFORMANCE PRODUCTS, INC.**  **PLAINTIFF/ COUNTER-DEFENDANT**

**V.**

**SMITH-CNC CHINA NETWORKING COMPANY, et. al.**  **DEFENDANTS/ COUNTER-PLAINTIFFS**

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on a motion by Plaintiff/ Counter-Defendant Holley Performance Products, Inc. ("Holley") to dismiss two counterclaims brought by Defendants/ Counter-Plaintiffs Smith-CNC China Networking Company, et. al. ("Smith-CNC"). Holley seeks dismissal of Smith-CNC's counterclaims based on 1) the Kentucky Mold Lien statute; and 2) a breach of the implied contractual covenant of good faith and fair dealing. Fully briefed, this matter is ripe for decision. For the following reasons, the Holley's Motion to Dismiss is **GRANTED in part and DENIED in part**.

### FACTS

Plaintiff Holley Performance Products, Inc. ("Holley"), is a manufacturer of specialized automobile parts including high performance carburetors, superchargers, and throttle body fuel injection systems, which are specifically designed for racing applications. According to Holley, every race car in the NASCAR Nextel Cup and every race car driven by a NHRA Pro-Stock champion uses a carburetor manufactured by Holley. (Plaintiff's Complaint, ¶ 14).

In 2005, Holley began contractual negotiations with Defendant Smith-CNC China Networking

Company ("Smith-CNC"). Holley wanted Smith-CNC to facilitate the manufacturing of certain types of Holley component parts in China. Prior to the execution of a final agreement, Holley provided Smith-CNC with the documentation it needed to make the "toolings"- or molds - that were necessary to manufacture the component parts Holley planned to order. Subsequently, Smith-CNC arranged for a Chinese manufacturer to fabricate the tooling at issue in this case which was to be used in the manufacturing of component parts. In June 2005, Holley and Smith-CNC formally entered into a contract which provided that Smith-CNC would sell and deliver to Holley certain types of component parts that Smith-CNC would have manufactured in China. (Ex.A-2, Holley Performance Products Agreement).The Agreement specifically states that "all tooling used in the production of the Products ("Tooling") is owned by and is the property of Holley." (Agreement, p. 8, § L.).[1] Pursuant to this Agreement, Chinese manufacturers began to manufacture component parts for Holley.

On February 2, 2006, Holley terminated its contract with Smith-CNC, alleging that Smith-CNC had repeatedly failed to comply with its obligations under the contract. Following the termination of the agreement, Smith-CNC claimed that Holley owed it over $300,000.00 for component parts that it had supplied to Holley pursuant to their Agreement. Additionally, Smith-CNC claimed that Holley's employment of a new broker, Taurus International, and its continued use, through Taurus, of the Chinese manufacturers whom Smith-CNC had first engaged, constituted a violation of the Agreement's exclusivity clause. The two companies entered into negotiations concerning the disputed claims, but failed to reach an agreement. On October 14, 2006, Smith-CNC removed tooling from one of the Chinese manufacturers, thereby preventing the continued manufacture of component parts for Holley.

---

[1] The Agreement also provided: "The respective rights and duties of the parties are to be determined, in accordance with the law of the State of Kentucky, USA, exclusive of any provisions related to conflict of laws. (Agreement, p.10, § Q).

Subsequently, Holley instituted this legal action against Smith-CNC, alleging conversion, tortious interference with its business relationships, defamation and libel, breach of contract, and breach of the covenant of good faith and fair dealing. (DN 1, Complaint). Holley also filed a motion for a preliminary injunction to force Smith-CNC to return the tooling to the manufacturing facility and to refrain from taking any other tooling in use by Holley's Chinese suppliers. Despite Smith-CNC's assertion that it had a right to retain the tooling under the Kentucky Mold Lien statute, KRS §376.435, the Court ordered Smith-CNC to return the tooling to Holley finding that, to date, Smith-CNC had provided no evidence to establish that it qualified as a "molder" under the statute or that it had provided Holley with the requisite statutory notice of its plan to enforce a lien. (DN 19).

After returning the tooling, Smith-CNC refiled a counterclaim against Holley seeking enforcement of the Kentucky Mold Lien statute, and also alleging breach of contract; breach of covenant of good faith; and tortious interference with business relationships. (DN 32).

## LEGAL STANDARD

Upon a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), the Court must construe the complaint in a light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of its claim that would entitle it to relief. Sistrunk v. City of Strongsville, 99 F.3d 194, 197 (6th Cir. 1996), cert. denied 520 U.S. 1251 (1997). A judge may not grant a Fed. R. Civ. P. 12(b)(6) motion based on a disbelief of a complaint's factual allegations. Wright v. MetroHealth Medical Center, 58 F.3d 1130, 1138 (6th Cir. 1995), cert. denied 516 U.S. 1158 (1996). A Fed. R. Civ. P. 12(b)(6) motion tests whether the plaintiff has stated a claim for which the law provides relief. Gazette v. City of Pontiac, 41 F. 3d 1061, 1064 (6th Cir. 1994).

This standard of review requires that a plaintiff plead more than bare legal conclusions. Lillard v. Shelby County Bd. Of Educ., 76 F.3d 716, 726 (6th Cir. 1996). The complaint must give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. Gazette, 41 F.3d at 1064. "In practice, a...complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." Lillard, 76 F.3d at 726. (citation omitted). In deciding a motion to dismiss, the Court may consider all papers and exhibits appended to the complaint, as well as any matters of which judicial notice may be taken. Hirsch v. Arthur Anderson Co., 72 F.3d 1085, 1092 (2d Cir. 1995).

## DISCUSSION
### A. The Kentucky Mold Lien Statute

As noted above, in its counterclaim, Smith-CNC claims that it possesses a statutory lien, pursuant to KRS 376.435, over the tooling it was forced to return under the Court's preliminary injunction order (DN 19) and requests that the Court vacate its previous order and enforce this statutory lien.

KRS 376.435(3)(a) provides:

A molder shall have a lien, dependent on possession, on all dies, molds, forms, or patterns in his hands and that belong to a customer, for the balance due him from the customer for any manufacturing or fabrication work, and in the value of all material related to the work. The molder may retain possession for the die, mold, form, or pattern until the charges are paid.

The statute defines a "molder" as:

any person who fabricates, casts, or otherwise makes or uses a die, mold, form, or pattern for the purpose of manufacturing, assembling, casting, fabricating, or otherwise making a product for a customer. 'Molder' includes, but is not limited to, a tool or die maker.

KRS 376.435(1)(b).

Holley, of course, argues that the Court should adhere to its previous ruling. In its preliminary injunction order, the Court stated that the "facts indicate that while the Chinese manufacturers engaged by Smith-CNC to manufacture toolings and component parts for Holley are 'molders' under the statute, Smith-CNC is nothing more than a broker facilitating the manufacture." (DN 19, p. 5).

Smith-CNC, on the other hand, contends that it does qualify as a "molder" under the statute because it "*use(d)* a die, mold, or pattern for the purpose of manufacturing..." KRS 376.435(1)(b) (emphasis added). To support its argument, it relies on language found in the agreements between Holley and Smith-CNC., such as "all tooling *used* in...production...is owned by Holley." (DN 1, Ex. A, § L) (emphasis added).

The factual allegations of the counterclaim make it clear that Smith-CNC was not the manufacturer of products and that it only acted as a broker, or middleman, between Chinese manufacturers and Holley. Smith-CNC's "use" of the dies in question is not the type of "use" envisioned by the statute. Therefore, the Court holds that Smith-CNC is not a "molder" under the Kentucky lien statute and, therefore, has not stated a claim upon which relief can be granted. Accordingly, the Court need not consider whether and how the notice requirements of the statute apply to Smith-CNC. Holley's motion to dismiss this claim is granted.

**B. The Implied Covenant of Good Faith and Fair Dealing**

In its counterclaim, Smith-CNC also alleges that Holley's actions breached the implied covenant of good faith and fair dealing which was present in its contractual relationship with Smith-CNC. (DN 32, ¶ 15). Holley contends that Smith-CNC's claim relating to the breach of this implied covenant should be dismissed because Smith-CNC's factual allegations all relate to the breach of

express provisions of the parties' contract and not to the breach of this implied duty. The Court concludes that it will be in a better position to determine if there exists any conduct on the part of Holley sufficient to establish a separate claim for breach of this implied covenant once discovery is complete. Therefore, Holley's motion to dismiss this claim is denied.

## CONCLUSION

For the foregoing reasons, Holley's motion to dismiss Smith-CNC's counterclaims based upon 1) the Kentucky Mold Lien statute is **GRANTED**; and 2) a breach of the implied contractual covenant of good faith and fair dealing is **DENIED.**

cc: Counsel of Record