**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**BOWLING GREEN DIVISION**

**CIVIL ACTION NO. 1:06CV-165-M**

**HOLLEY PERFORMANCE PRODUCTS, INC.**                              **PLAINTIFF**

**V.**

**SMITH-CNC CHINA NETWORKING CO., ET AL.**                         **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER

These matters are before the Court upon a motion by Defendants, Smith-CNC China Networking Co., et al. ("Smith-CNC"), for modification of a contempt fine (DN 36); and upon a motion by the Plaintiff, Holley Performance Products, Inc. ("Holley"), to recover attorneys' fees, costs, and expenses, as well as actual damages, incurred as a result of Defendant's contempt (DN 42). Fully briefed, these matters are ripe for decision. For the following reasons, the Defendants' motion for modification of the contempt fine is **GRANTED**; and the Plaintiff's motion for attorneys' fees, costs, and expenses, and damages is **GRANTED in part** and **DENIED in part**.

### I. FACTS

On November 9, 2006, the Court granted Plaintiff Holley's motion for a preliminary injunction and ordered Smith-CNC to return the tooling it had removed from a manufacturing facility in China. (DN 19). On November 15, 2006, following Smith - CNC's failure to comply with this order, Holley filed a motion to show cause. (DN 21). On November 21, 2006, the Court ordered Smith-CNC pay a ten thousand dollar ($10, 000) fine for each day he continued to fail to comply with the order and to pay attorneys' fees and expenses Holley incurred as result of the noncompliance. (DN 29). Then, following a hearing on December 1, 2006, the Court concluded that

Smith-CNC remained in contempt of Court and ordered the incarceration of Mr. Smith if Smith-CNC did not comply with the order in thirty-six hours. (DN 31). Finally, on December 6, 2006, after Holley's attorneys confirmed that Smith-CNC had complied with the Court's preliminary injunction, the Court issued another order, vacating its previous order as to the requirement of Mr. Smith's incarceration, and amending it to allow a modification of Mr. Smith's contempt fine based on evidence of his financial resources. (Id.).

## II. DISCUSSION

### A. The Contempt Fine

The Supreme Court has held that the amount of contempt fine should be based on at least three factors: 1) "the character and magnitude of the harm threatened by the continued contumacy;" 2) "the probable effectiveness of any suggested sanction bringing about the desired result;" and 3) "the amount of a defendant's resources and the consequent seriousness of the burden to that particular defendant." United States v. United Mine Workers, 330 U.S. 258, 303-304 (1947). Upon considering each of these factors, and with the benefit of hindsight in this unusual situation, the Court concludes that no monetary amount would have coerced Defendant Smith into compliance with this Court's order. Rather, because of his financial situation, it was only the grave possibility of imprisonment that proved effective in bringing about Smith's compliance. Accordingly, while Smith's failure to return the tooling to Holley's manufacturer in China allegedly posed a costly, and even potentially irreparable harm to Holley, Mr. Smith's financial situation does not support the imposition of a fine. The fine was intended as a coercive measure, and because the threat of imprisonment achieved the desired result, the Court believes that a contempt fine at this point would only be punitive.

**B. Holley's Actual Damages**

Holley also claims that it is entitled to be compensated for the actual damages it incurred as a result of Smith-CNC's contempt. Specifically, Holley seeks to recover air freight costs, (DN 52, Ex. C), costs related to the production of new tooling (DN 42, Ex. H), and costs related to the work of two of Holley's salaried employees. As to the first, the Court finds that Holley is entitled to recover the costs it incurred to "catch up" its supply of throttle bodies. However, in this regard, Holley should only recover the cost of air freight minus the cost it would have incurred if the throttle bodies had been shipped via its standard, less expensive, overseas method. Accordingly, when Holley submits the necessary documentation showing how much it would have cost to ship the throttle bodies via its standard shipping method, the Court will issue an appropriate supplemental order regarding the amount to be paid by Smith-CNC. As to the costs related to the production of new tooling, the Court declines to allow Holley to recover because the receipt shows that this expense was incurred before Smith-CNC failed to comply with the Court's contempt order (DN 42, Ex. H).[1] Finally, the Court also declines to find that the time and work of two of Holley's salaried employees in relation to this contract dispute constitute actual damages suffered by Holley. Thus, based on the evidence submitted by Holley, the Court finds that Holley is entitled to recover actual damages in the amount of the cost of air freight less the cost of standard shipping.

**C. Holley's Attorneys' Fees, Costs, and Expenses**

The Court has also ordered that Smith-CNC reimburse Holley for the reasonable attorneys' fees, costs, and expenses that it incurred as a result of Smith-CNC's contempt. The Court must now determine what attorneys' fees, costs, and expenses are "reasonable." "The primary concern in an

---

[1] The invoice submitted by Holley in relation to these costs shows that hows that Holley ordered the production of new tooling on October 20, 2006 - weeks before the Court had even issued the preliminary injunction.

attorney fee case is that the fee awarded be reasonable." Reed v. Rhodes, 179 F.3d 453, 472 (6th Cir. 1999). The starting point should be the determination of the fee applicant's "lodestar," which is the proven number of hours reasonably expended on the case by its attorneys, multiplied by their court-ascertained reasonable hourly rate. Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); Adcock-Ladd v. Secretary of Treasury, 227 F.3d 343, 349 (6th Cir. 2000). In calculating the "reasonable hourly rate" component of the lodestar computation, the trial court should assess the "prevailing market rate in the relevant community." Adcock-Ladd, 227 F.3d at 350 (quoting Blum v. Stenson, 465 U.S. 886, 896 (1984)). Further,

> the Sixth Circuit has resolved that, when a counselor has voluntarily agreed to represent a plaintiff in an out-of-town lawsuit, thereby necessitating litigation by that lawyer primarily in the alien locale of the court in which the case is pending, the court should deem the "relevant community" for fee purposes to constitute the legal community within that court's territorial jurisdiction; thus the "prevailing market rate" is that rate which lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record, rather than foreign counsel's typical charge for work performed within a geographical area wherein he maintains his office and/or normally practices, at least where the lawyer's reasonable "home" rate exceeds the reasonable "local" charge.

Id. (citing Hudson v. Reno, 130 F.3d 1193, 1208 (6th Cir. 1997), cert. denied, 525 U.S. 822, 142 L. Ed. 2d 50, 119 S. Ct. 64 (1998).

After determining the appropriate "lodestar" rate, the Court may then adjust it, within limits, to reflect relevant considerations peculiar to the subject litigation. Adcock-Ladd, 227 F.3d at 349. The factors a court may consider in its adjustments are: 1) the time and labor required by a given

case; 2) the novelty and difficulty of the questions presented; 3) the skill needed to perform the legal service properly; 4) the preclusion of employment by the attorney due to acceptance of the case; 5) the customary fee; 6) whether the fee is fixed or contingent; 7) time limitations imposed by the client or the circumstances; 8) the amount involved and the results obtained; 9) the experience, reputation, and ability of the attorneys; 10) the "undesirability" of the case; 11) the nature and length of the professional relationship with the clients; and 12) awards in similar cases. Id. at n.8 (citing Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-719 (5th Cir. 1974)).

Here, Holley has submitted an application for attorneys' fees totaling $52,555.00 and costs and expenses totaling $5,166.70. (DN 43). However, these fees are not reasonable in the community where this Court sits. In this case, the relevant community is the Western District of Kentucky, the venue where this action has been brought and which is mandated by the contract, drawn up by Holley, between Holley and Smith. This "community" includes cities such as Owensboro, Bowling Green, Paducah, and Louisville - the city where Holley's local counsel in this action, Mr. Vitale, practices. In this action, most of Holley's attorneys' fees have accrued from Holley's counsel at Freeborn and Peters, LLP, located in Chicago. They have charged Holley rates between $230 and $450/hour. (DN 43, Ex. C). Holley's local counsel, Mr. Vitale, a partner in a prestigious Kentucky law firm, on the other hand, has charged an hourly rate of $ 240. (DN 43, Ex. D). Thus, using the lodestar method, the Court finds that a reasonable hourly rate in this jurisdiction is no more than $240.

Further, while the Court accepts Holley's position as to some of the relevant Johnson factors, specifically the importance of Freeborn and Peters' China practice in the present case, which relates to its attorneys' experience, reputation, and ability, and the inability of Holley's attorneys to engage in other employment due to the time limitations involved in the matter at hand,

the Court also accepts Smith-CNC's position as to other, mitigating <u>Johnson</u> factors. For example, the Court agrees that Holley's attorneys spent more time and labor than were reasonably necessary here and that the legal issues presented here were not especially novel or complex. Thus, after considering the relevant factors, the Court declines to adjust the lodestar rate from $240/hour. Accordingly, in its calculations, the Court accepts the normal rate of the two attorneys who billed out at $240/ hour or less - Mr. Vitale and Ms. Atterberry - and adjusts the normal rate of the attorneys who billed out at more than that rate - Mr. Ohlms, Ms. Friedlander, and Mr. Gu - to the lodestar rate of $240/hour. The Court accepts Mr. Zhang's total charge of $1,250.00.

Further, the Court will only require Smith-CNC to pay Holley's attorneys' fees for their services between November 15, 2006 - the date of the first pleading of noncompliance- and December 6, 2006- the date the Court confirmed Smith's compliance with the preliminary injunction. Thus, the amount of attorneys' fees Smith must pay to Holley is:

| Attorney | Hours | Rate | Fees |
|---|---|---|---|
| Ohlms, Todd J. | 60 | $240 | $14,400.00 |
| Friedlander, Elizabeth T. | .4 | $240 | $96.00 |
| Atterberry, Rachel | 45.4 | $230 | $10,442.00 |
| Gu, Xin "Max" | 26.9 | $240 | $6,456.00 |
| Vitale. Michael | 4 | $240 | $960.00 |
| Zhang, Yangmin | NA | NA | $1,250.00 |
| ATTORNEYS' FEES TOTAL: | | | $33,604.00 |

Finally, the Court will require Smith-CNC to pay all of the legal costs and expenses Holley

incurred between November 15, 2006 and December 6, 2006, including attorney travel costs, legal research expenses, transcript fees, and photocopying costs. This amount totals $4,057.90. (DN 43, Ex. F).

Thus, the total amount Smith-CNC must pay Holley for its attorneys' fees ($33,604.00), costs, and expenses ($4,057.90), incurred as a result of Smith's noncompliance with the Court's November 9, 2006 preliminary injunction, is $ 37, 661.90.

### III. CONCLUSION

For the foregoing reasons, Smith-CNC's motion to modify the contempt fine is **GRANTED** and Holley's motion to recover attorneys' fees, costs, expenses, and actual damages is **GRANTED in part and DENIED in part.** Smith-CNC shall pay Holley $ **37,661.90** for attorneys' fees, costs, and expenses. The Court will issue a subsequent order, regarding the additional amount Smith-CNC shall pay Holley for actual damages, after Holley has submitted the requisite documentation. **IT IS SO ORDERED.**

cc: Counsel of Record